

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AXCESS INTERNATIONAL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 3:10-cv-1383-F |
| v. | § | |
| | § | |
| BAKER BOTTS, L.L.P., | § | |
| | § | |
| Defendant. | § | |

## ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION

On February 20, 2013, the United States Supreme Court issued its ruling and opinion in *Gunn v. Minton*, 133 S. Ct. 1059 (2013). The Court held that a legal malpractice claim based on conduct during a patent infringement suit did not "arise under" federal patent law and thus did not invoke federal subject matter jurisdiction. In light of this ruling, this Court is now tasked with determining whether the Court continued to have subject matter jurisdiction in the above-numbered case. While this is a particularly challenging inquiry, however the Court ultimately concludes that subject matter jurisdiction is lacking and accordingly DISMISSES the case for want of subject matter jurisdiction.

### I. *Summary of the Case*

Axcess International, Inc. ("Axcess" or "Plaintiff") brought this malpractice case against its former attorneys, Baker Botts, L.L.P. ("Baker Botts" or "Defendant") on allegations that Baker Botts simultaneously represented Axcess and its competitor, Savi Technologies, Inc. ("Savi"), in obtaining patents for radio frequency identification products ("RFID"). Axcess is a Delaware corporation with its principal place of business in Texas. Baker Botts is a Texas Limited Liability Partnership with its principal place of business in Houston, Texas. As both

parties are residents of Texas, this Court's jurisdiction is only appropriate if there is federal subject matter jurisdiction.

Axcess first retained Baker Botts in 1998 to provide it with general intellectual property advice and to draft, file and pursue certain patent applications related to RFID technology, particularly "dual frequency" technology. Terry Stalford represented Axcess for Baker Botts from 1998 until October 2002, and again from February 2004 to April 2004, when he left the firm. Brian Oaks took over for Mr. Stalford until Baker Botts ceased to represent Axcess in 2009. As a result of Baker Botts' work, Axcess received several patents. During this same period, another Baker Botts attorney, Murray Smith, represented Savi in the prosecution of RFID patents from July 1999 until February 2004 when Mr. Smith left the firm. Although both Baker Botts and Savi operated in the same industry and were direct competitors, Axcess was not informed (and thus could not consent) to Baker Botts' representation of both companies.

Axcess now alleges that the specifications and preferred embodiments described in Axcess' patent applications anticipate and render obvious at least some of the claims in Savi's later applications. Upon the discovery of potential infringements of its patents by Savi, Axcess contacted its attorneys at Baker Botts in 2002 and 2004 and alerted them to Savi's possible infringement. At this time Baker Botts apparently failed to inform Axcess of its entitlement to patent protection and failed to disclose that it was simultaneously representing Savi.[1]

Another company, Aeroscout, filed a declaratory judgment action against Savi to contest impending allegations of patent infringement of Savi's patents. In a January 2009 amended complaint, Aeroscout alleged that Savi's RFID patents at issue were invalid based in part because Baker Botts's dual representation of Axcess and Savi was a fraud on the United States

---

[1] In a sister-case before this Court, Axcess has sued Savi for patent infringement. *Axcess Int'l, Inc. v. Savi Technologies, Inc.*, No. 10-CV-1033-F (filed May 21, 2010).

Patent and Trademark Office ("USPTO"), particularly given that Axcess's patents had priority over the Savi patents. In February 2009, Axcess was subpoenaed to testify and first learned of the dual representation. Baker Botts did not inform Axcess of this allegation, despite the fact that it had received a copy of the complaint in January.

Axcess brought this case against Baker Botts on July 15, 2010. A Second Amended Complaint was filed on April 4, 2012 (Docket No. 90) and remains the operative pleading at this time. Axcess has brought Texas state law claims of negligence, breach of fiduciary duty and material non-disclosure. As a basis for these claims, Axcess has alleged violations of not only the Texas Disciplinary Rules, but also violations of the ethics rules for practicing before the PTO as outlined in the Manual of Patent Examining Procedure.

## II. *Summary of* Gunn v. Minton

This Court first dealt with the issue of federal jurisdiction over patent malpractice claims in *Air Measurement Technologies, Inc. N.-S. Corp.*, SA-03-CA-0541-RF, 2003 WL 22143276 (W.D. Tex. Sept. 5, 2003) (Furgeson, J.). The Federal Circuit affirmed and found "[o]n issue of first impression, 'arising under' jurisdiction existed under federal patent law in former client's lawsuit alleging legal malpractice based on alleged errors by counsel in patent prosecution and patent litigation..." *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007). While the Supreme Court did not consider the *Air Measurement* ruling, it did take up the subject in *Gunn v. Minton*, 133 S. Ct. 1059 (2013) to consider whether a state law claim alleging legal malpractice in a patent case must be brought in federal court.

In the underlying patent case, Vernon Minton brought a federal lawsuit in the Eastern District of Texas against the National Association of Securities Dealers, Inc. ("NASD") and the

3

NASDAQ Stock Market, Inc. for infringement of his patent on an interactive securities trading system. This patented system was substantially based on a prior invention, the Texas Computer Exchange Network ("TEXCEN"), a computer program and telecommunications network that facilitated securities trading. A little more than a year prior to applying for an obtaining the patent for the second system, Minton leased TEXCEN to R.M. Stark & Co., a securities brokerage.

On summary judgment the District Court found the patent invalid under the "on sale" bar. 35 U.S.C. § 102(b). Under this section, a person cannot obtain a patent if "the invention was…on sale in [the United States], more than one year prior to the date of application." The District Court rejected Minton's argument that the patented system was different from TEXCEN, found that the on sale bar applied and invalidated the patent. Minton filed a motion for reconsideration arguing for the first time that because the TEXCEN lease was part of ongoing testing the "experimental use" exception to the on sale bar applied. *See Pfaff v. Wells Electronics, Inc.* 52 U.S. 55, 64, 119 S.Ct. 304 (1998). The Federal Circuit confirmed on appeal that Minton had waived his experimental use argument by not raising it timely.

Minton then filed a motion for malpractice in Texas state court against his lawyers for failure to raise the experimental use argument. The trial court found that Minton had not produced sufficient evidence to show that the lease was for an experimental purpose and granted summary judgment in favor of the lawyers. On appeal, Minton argued that his malpractice claim "arose under" federal patent law under 28 U.S.C. § 1338(a) and therefore, the Texas state court lacked subject matter jurisdiction and the case should be vacated and dismissed. The Texas Court of Appeals disagreed. Applying *Grable & Sons Metal Products, Inc. v. Darue Engineering &*

4

*Mfg.*, 545 U.S. 308, 314, 125 S.Ct. 2362 (2005), the Court held that the federal interests in Minton's claim were not sufficient to trigger "arising under" jurisdiction.

The Texas Supreme Court reversed, concluding that because the success of the malpractice claim relied on the viability of the experimental use argument, federal court was the proper forum for the claim because there is "an interest in the uniform application of patent law by courts well versed in that subject matter." 355 S.W.3d 643, 646 (2011). This ruling was consistent with the the standard adopted by the Federal Circuit in *Air Measurement* which held that where "establishing patent infringement is a necessary element of a malpractice claim stemming from alleged mishandling of patent prosecution and earlier patent litigation, the issue is substantial and contested, and federal resolution of the issue was intended by Congress, there is 'arising under' jurisdiction under § 1338." 504 F.3d at 1273.

The United States Supreme Court granted certiorari in *Gunn v. Minton* and clarified the jurisdiction of the patent malpractice claims. Federal courts have original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States," 28. U.S.C. § 1331, and in "any civil action arising under any Act of Congress relating to patents," § 1338(a). Congress has also specifically excluded state court jurisdiction over any claims "arising under any Act of Congress relating to patents." *Id.* Therefore, should a patent malpractice claim "arise under" such an Act, jurisdiction would only be proper in the federal system.

In determining patent-based federal subject-matter jurisdiction, the courts interpret "arising under" for purposes of § 1338(a) the same as § 1331. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 808-809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). There are two ways that a case can "arise under" federal law. First, and most commonly, a case can arise under federal law when federal law specifically creates or authorizes the cause of action. *Gunn*, 133 S.

5

Ct. at 1064. In the patent context, a patent infringement suit "arises under" federal law because such cause of action is authorized by 35 U.S.C. §§ 271, 281. There is no federal legal malpractice claim; instead such claims are created under state law. In order for a claim not created by federal law to have federal jurisdiction, it must pass what is known as the *Grable* test: "Does the 'state-law claim [1]necessarily raise a stated federal issue, [2] actually disputed and [3] substantial, [4] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities'?" *Gunn*, 133 S.Ct. at 1065 (citing *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S. Ct. 2363, 2368, 162 L. Ed. 2d 257 (2005)).

In conducting the *Grable* analysis, the Supreme Court concluded that "state law legal malpractice claims based on underlying patent matters will rarely, if ever, arise under federal patent law for purposes of § 1338(a)." The Court found that any malpractice case which would require resolution of a patent "case within a case" would necessarily require adjudication of federal patent issues because the complaining party, in order to prevail, would need to show that he would have prevailed in his patent case had his attorneys not committed malpractice. *Gunn*, 133 S.Ct. at 1066. The Court similarly found that the patent issue was actually disputed and was the central focus of dispute. *Id.*

In *Gunn*, what the Court found lacking was the requisite substantiality to the federal system as a whole. The Court recognized that substantiality of the federal issue has frequently been confused with necessity and noted that "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires. The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a

whole." *Id.* In evaluating malpractice claims, the Court recognized that the adjudication of the patent issue is hypothetical and backward looking. *Id.* At 1066-67. "No matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result of the prior federal patent litigation." *Id.* At 1067.

Furthermore, in making such a hypothetical inquiry, the state courts will rely on federal precedents and will not undermine the uniformity of patent law. The Court noted that even when a novel issue of patent law is introduced for the first time in the course of a state malpractice "case within a case" the "substantiality" element remains unaffected. *Id.* If the issue is pervasive within the patent system, it will likely be at issue in an actual patent litigation where it can be resolved by the federal courts without any deference to the hypothetical conclusions made by the state court. *Id.* If, on the other hand, it is not pervasive then by definition it cannot be substantial and the state court adjudication can have relatively little, if any, effect on patent law generally. *Id.* In order to have "arising under" jurisdiction without a federal statutory cause of action, there must be "something more, demonstrating that the question is significant to the federal system as a whole". *Id.* at 1068.

Finally, the Supreme Court reasoned that if an issue failed to meet the substantiality requirement, its resolution in the federal courts would disrupt the congressionally approved balance between state and federal jurisdiction. Even independently, the states have "a special reasonability for maintaining standards among members of the licensed professions". *Id.* (quoting *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 460, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978)). This is particularly true for attorneys, which function as officers of the courts and perform important governmental functions in administering justice. *Id.* (citing *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)). There is "no

7

reason to suppose that Congress—in establishing exclusive federal jurisdiction over patent cases—meant to bar from state courts state legal malpractice claims simply because they require resolution of a hypothetical patent issue." *Id.*

### III. *Discussion*

Axcess asserted federal jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. It now seeks to have its own case dismissed for lack of jurisdiction in order to preserve its right to sue in state court by tolling the statute of limitations as allowed under TEX. CIV. PRAC. & REM. CODE § 16.064. As Plaintiff alleges purely state law causes of action, this Court is left to determine only one issue: whether violations of the federal USPTO ethics rules in the Manual of Patent Examining Procedure "arise under" federal patent law for purposes of 28 U.S.C. § 1338(a). This jurisdictional question had previously been resolved in the Federal Circuit in *Carter v. ALK Holdings, Inc.* which held that compliance with the Manual of Patent Examining Procedure and the CFR (and specifically §10.66) was a necessary, federal element of the plaintiff's malpractice claim "because the CFR and MPEP establish [the] expected fiduciary duties to [the] clients." 605 F.3d 1319, 1325 (Fed. Cir. 2010). However, in light of the Supreme Court's resolution in *Gunn*, this Court finds the basis for the *Carter* court's conclusion no longer determinative.

Like the claims in *Gunn*, Axcess's malpractice case against Baker Botts will require resolution of a patent "case within a case" and all parties admit that the Supreme Court's opinion squarely places those elements of the claims within the jurisdiction of the state court. Nevertheless, the parties disagree whether the alleged violation of USPTO Rule 10.66 creates a claim that arises under federal patent law. On this point, the proper application of *Gunn* is less clear. Ultimately, however, the Court concludes that exclusive federal jurisdiction is lacking.

8

The USPTO has its own bar with specific qualifications and procedures for admission administered by its Office of Enrollment and Discipline (OED). Like all state bars, the OED has a set of Rules of Professional Conduct applicable to all lawyers that practice before the USPTO. 37 C.F.R. § 10.20 et seq. These Rules were very recently modified to more closely match the ABA Model Rules of Professional Conduct to ensure that they closely conform to the rules that govern lawyers in their home states. Will Covey, Deputy General Counsel for Enrollment and Discipline, *Empowering Current and Future IP Attorneys*, DIRECTOR'S FORUM: A BLOG FROM USPTO'S LEADERSHIP (Apr. 3, 2013, 11:10 AM), http://www.uspto.gov/blog/director/entry/empowering_current_and_future_ip ("Designed to make life easier for the more than 41,000 practitioners who interact with our agency, they are based upon the American Bar Association's Model Rules of Professional Conduct. The ethics rules are the first major update since 1985 and reflect the rules in place in 49 states and the District of Columbia.").

Furthermore, these Rules do not replace or supersede any ethics rules implemented by the various state and international jurisdictions; attorneys practicing before the USPTO must simultaneously adhere to the professional responsibility rules in their home jurisdiction and those imposed by the USPTO. *See* 37 C.F.R. 11.24 (allowing for reciprocal and concurrent disciplinary action by USPTO with another jurisdiction). The USPTO has indicated that the interpretation and precedent development related to these new rules should occur during the disciplinary process: "[a] body of precedent specific to practice before the USPTO will develop as disciplinary matters brought under the USPTO Rules progress through the USPTO and the federal courts." Executive Summary, Changes to Representation of Others Before the United States Patent and Trademark Office, 78 Fed. Reg. 20,179 (Apr. 3, 2013) (to be codified at 37

C.F.R pt. 10); *see also Sperry v. State of Fla. ex rel. Florida Bar*, 373 U.S. 379, 385, 83 S. Ct. 1322, 1326, 10 L. Ed. 2d 428 (1963) (finding that standards for practice before the PTO are governed by federal law); *Jaskiewicz v. Mossinghoff*, 802 F.2d 532, 534 (D.C. Cir. 1986) (finding federal jurisdiction over appeal of disciplinary action taken by USPTO). The Court acknowledges that these new rules were not in effect when Baker Botts represented Axcess, but understands that there were no major changes in the substance of the rules themselves nor the mechanisms for their enforcement. It is for this reason that the Court will discuss the Rule allegedly violated by Baker Botts under the former version of these Rules.

In representing Axcess before the USPTO, Baker Botts was bound to comply with both the Texas Disciplinary Rules of Professional Conduct and the USPTO Rules of Professional Conduct. At issue here are USPTO Rule 10.66 (Refusing to accept or continue employment if the interests of another client may impair the independent professional judgment of the practitioner), codified in 37 C.F.R. § 10.66, and Texas Rule 1.06 (Conflict of Interest; General Rule). The Texas Rule is more general prohibiting an attorney from representing "a person if the representation of that person: (1) involves a substantially related matter in which that person's interests are materially an directly adverse to the interests of another client of the lawyer or the lawyer's firm; or (2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client..." The USPTO Rule requires the practitioner to "decline proffered employment if the exercise of the practitioner's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the practitioner in representing differing interests...." If the practitioner has already accepted the second employment, it may not continue to represent both parties if "in behalf of a client will be or is likely to be adversely

affected by the practitioner's representation of another client, or if it would be likely to involve the practitioner in representing differing interests...." While the Court will not weigh in on the applicability of these regulations to the conduct alleged by Axcess in this suit, the Court finds that both Rules intend to proscribe conduct that is likely to lead to conflicts of interests among clients.

Even if, however, Axcess could prove a violation of a Rule of Professional Conduct, under Texas law a violation of either set of Rules would not necessarily establish a claim for legal malpractice. To bring a malpractice claim under Texas law, "a plaintiff must show 'that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred.'" *Alexander v. Turtur & Associates, Inc.*, 146 S.W.3d 113, 117 (Tex. 2004) (citing *Peeler v. Hughes & Luce*, 90 S.W.2d 494 (Tex. 1995)). Although the duty owed to a client is integral to this claim, showing a violation of the Texas Disciplinary Rules of Professional Conduct does not automatically satisfy this element. *See e.g.*, *In re Frazin*, 02-32351-BJH-13, 2008 WL 5214036 (Bankr. N.D. Tex. Sept. 23, 2008) (noting that Preamble to the Rules § 15 states that the Rules do not define standards of civil liability); *Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.*, 779 S.W.2d 474, 479 (Tex. App.—El Paso 1989) (finding "a violation of state bar rules does not create a private cause of action"). Instead, the Rules serve as evidentiary guides to determine the existence and/or violation of a duty. RESTATEMENT (THIRD) OF LAW GOVERNING LAW. § 52 (2000) ("Proof of a violation of a rule or statute regulating the conduct of lawyers...does not give rise to an implied cause of action for professional negligence or breach of fiduciary duty...[but] may be considered by a trier of fact as an aid in understanding and applying [the standard and duty owed]"). Similarly, there is no authority to suggest that a violation of the USPTO Rules is a *per se* breach

of duty to a client. The USPTO Rules, like the Texas Rules, do not create a private cause of action for a violation, but merely allow for disciplinary action by the USPTO. 37 C.F.R. § 10.20(b). It therefore follows that the USPTO Rules could serve as evidence of duties owed by patent attorneys to their clients and a violation could serve as evidence of a breach of said duty.

In examining the relationship between Texas malpractice claims and Rules governing professional conduct issued by the state licensing agency it becomes clear that the duties owed to a client do not emanate from these Rules, but are governed more generally by Texas law on fiduciary duties. Although they may choose to do so, nothing obligates the Texas courts to impose liability on Texas lawyers for violations of federal patent professional responsibility rules[2]. It is important to note that attorney regulating authorities function separately from the judicial system—the regulating bar need not discipline attorneys found liable for malpractice nor must a court find liable an attorney disciplined for misconduct. This separation applies equally to the USPTO.

It is for this reason that Baker Botts's fear that resolution of this matter will have a significant effect on the entire federal patent system is entirely unfounded. Baker Botts argues that Axcess's malpractice claim raises for the first time a new principle of ethics and duty: a "subject matter conflict" rule. Whether or not there exists such a rule for all federal patent lawyers is not at issue; what is at issue is whether *Texas* patent lawyers owe their clients a duty under *Texas* law to not simultaneously represent other clients operating in the same industry or in the same subject-matter. If such a rule applies to all attorneys practicing patent law before the USPTO, this obligation will only come to light through disciplinary investigations and actions taken by the USPTO itself. Additionally, there can be no legitimate fear that a ruling from a

---

[2] The Court also notes that given the USPTO's attempts to synchronize standards of professional conducts among all U.S. jurisdictions, it is very likely that a violation of the USPTO Rules will also be a violation of state rules and state law.

Texas court finding such a conflict-rule would be binding on any attorneys practicing outside this jurisdiction. While it is true that another state court might look to a Texas case for guidance, it would by no means be binding.

In this sense, the matter proposed as the basis for federal jurisdiction in this case has a more tenuous connection with federal patent law than the "case within a case" which will absolutely require complete deference to federal interpretations of patent law. A complete *Grable* analysis confirms the same.

Unlike a determination of causation and damages in a patent malpractice case, which will necessarily require a hypothetical re-examination of the underlying case under patent law, the duty element does not necessarily raise a federal issue, even if the attorneys allegedly violated the USPTO Rules. Even if the alleged violation is necessarily raised, it does not follow that the state court would need to evaluate or apply federal law, but would consider the violation as evidence. Furthermore, the third factor in the *Grable* analysis weighs against federal jurisdiction; any federal issue raised is not substantial. As explained above, the duty element of the malpractice claim is defined by Texas law and the alleged misconduct may also invoke Texas professional responsibility doctrines; Texas law far overshadows the federal considerations brought in by the USPTO Rules of Professional Conduct.

Finally, and most critically, finding "arising under" jurisdiction for a violation of a USPTO Rule would disturb the congressionally approved balance of federal and state judicial responsibilities. As repeated by the *Gunn* court, the states are tasked with "a special reasonability for maintaining standards among members of the licensed professions". 133 S. Ct. at 1067 (quoting *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 460, 98 S. Ct. 1912, 56 L.Ed.2d 444 (1978)). Malpractice has typically been the realm of the state judiciaries; this was confirmed by

congressional decisions to *not* include a federal malpractice cause of action in patent law, despite giving the USPTO authority to regulate the lawyers that practice before it. Furthermore, to find federal jurisdiction merely because the plaintiff can allege a violation of a USPTO Rule (that will in most cases be a violation of a similar state rule) would effectively eliminate the Supreme Court's holding in *Gunn* and circumvent state jurisdiction. But the state courts are best equipped to resolve questions of legal malpractice in general. To find arising under jurisdiction on these grounds would appropriate authority of the Texas courts and people to hold their own attorneys accountable for their actions.

### IV.   *Conclusion*

For the reasons articulated above, this Court is of the opinion that this Court lacks subject matter jurisdiction over the claims alleged in this case. For that reason, the Court DISMISSES the case for lack of jurisdiction.

IT IS SO ORDERED.

Signed this 12 day of April, 2013.

Royal Furgeson
Senior United States District Judge